COPY FOR JUDGE

FILED by _____ D.C.
INTAKE

APR 30 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · Ft. LAUD.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

07 - 21134

CIV - UNGARO - BENAGES

**UNITED STATES OF AMERICA**
*ex rel.* **JULIE DAVIS,**

Plaintiff,

v.

Civil Action No.

MAGISTRATE JUDGE
O'SULLIVAN

**SHERIDAN HEALTHCARE, INC.,** a
Florida corporation; **SHERIDAN
CHILDREN'S HEALTHCARE
SERVICES, INC.,** a Florida corporation;
**PLANTATION GENERAL HOSPITAL
LIMITED PARTNERSHIP,** a foreign
Limited partnership; **NORTH MIAMI
MEDICAL CENTER, LTD.,** a Florida
Limited partnership d/b/a Parkway
Regional Medical Center; **NORTH
BROWARD HOSPITAL DISTRICT**
d/b/a Broward General Medical Center,
North Broward Medical Center, Coral
Springs Medical Center, and Imperial
Point Medical Center; **PUBLIC HEALTH
TRUST OF MIAMI-DADE COUNTY,**
d/b/a Jackson Memorial Hospital;
**VARIETY CHILDREN'S HOSPITAL,** a
Florida non-profit corporation d/b/a Miami
Children's Hospital; **TENET
HEALTHSYSTEM NORTH SHORE, INC.,**
a Florida corporation d/b/a North Shore
Medical Center; **TENET HEALTHSYSTEM
HOSPITALS, INC.,** a Florida corporation
d/b/a West Boca Medical Center; **FMC
HOSPITAL, LTD.,** a Florida limited partnership
d/b/a Florida Medical Center; **COLUMBIA
HOSPITAL CORPORATION OF SOUTH**

**BROWARD**, a Florida corporation d/b/a
Westside Regional Medical Center;
**UNIVERSITY HOSPITAL LTD.,** a
Florida limited partnership d/b/a University
Hospital and Medical Center, and the
**SOUTH BROWARD HOSPITAL
DISTRICT** d/b/a Memorial Regional
Hospital, Memorial Regional Hospital
West and Memorial Hospital Pembroke;

       Defendants.

_____/

## FALSE CLAIMS ACT COMPLAINT
## AND DEMAND FOR JURY TRIAL

The **UNITED STATES OF AMERICA** *ex rel.* **JULIE DAVIS** sues

defendants **SHERIDAN HEALTHCARE, INC.**, a Florida corporation;

**SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC.**, a

Florida corporation; **PLANTATION GENERAL HOSPITAL LIMITED**

**PARTNERSHIP**, a foreign Limited partnership; **NORTH MIAMI**

**MEDICAL CENTER, LTD.**, a Florida Limited partnership d/b/a Parkway

Regional Medical Center; **NORTH BROWARD HOSPITAL DISTRICT**

d/b/a Broward General Medical Center, North Broward Medical Center,

Coral Springs Medical Center, and Imperial Point Medical Center; **PUBLIC**

**HEALTH TRUST OF MIAMI-DADE COUNTY**, d/b/a Jackson

Memorial Hospital; **VARIETY CHILDREN'S HOSPITAL**, a Florida non-

profit corporation d/b/a Miami Children's Hospital; **TENET**

**HEALTHSYSTEM NORTH SHORE, INC.**, a Florida corporation d/b/a

North Shore Medical Center; **TENET HEALTHSYSTEM HOSPITALS,**

**INC.**, a Florida corporation d/b/a West Boca Medical Center; **FMC**

**HOSPITAL, LTD.**, a Florida limited partnership d/b/a Florida Medical

Center; **COLUMBIA HOSPITAL CORPORATION OF SOUTH**

**BROWARD**, a Florida corporation d/b/a Westside Regional Medical

Center; **UNIVERSITY HOSPITAL LTD.**, a Florida limited partnership

d/b/a University Hospital and Medical Center, and the **SOUTH**

**BROWARD HOSPITAL DISTRICT** d/b/a Memorial Regional

Hospital, Memorial Regional Hospital West and Memorial Hospital

Pembroke; and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under the False Claims Act, 31 U.S.C. §§ 3729

   *et seq.*  This Court has jurisdiction over this case pursuant to 31 U.S.C.

   §§ 3732(a) and 3730(b).  This Court also has jurisdiction pursuant to 28

   U.S.C. § 1345 and 28 U.S.C. § 1331.

2. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§3729 *et seq.* and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391 (b) and (c), because at all times material and relevant, defendants transact and transacted business in this District.

3. The Ft. Lauderdale division of this Court has the greatest nexus to the allegations in this case as defendant SHERIDAN HEALTHCARE, INC. and its subsidiaries are headquartered in this division and many of the defendant hospitals are located in this division.

## **THE PARTIES**

4. Julie Davis (the "relator") brings this action on behalf of the United States of America against defendants for treble damages and civil penalties arising from defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* The violations arise out of fraudulent Medicaid billing.

5. At all times relevant to this action, defendant **SHERIDAN HEALTHCARE, INC.**, and its subsidiaries such as **SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC.** (collectively

hereafter referred to as "SHERIDAN"), operated a physician staffing service for hospitals.

6. At all times relevant to this action, defendants **PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP, NORTH MIAMI MEDICAL CENTER, LTD., NORTH BROWARD HOSPITAL DISTRICT, PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY, VARIETY CHILDREN'S HOSPITAL, TENET HEALTHSYSTEM NORTH SHORE, INC., TENET HEALTHSYSTEM HOSPITALS, INC., FMC HOSPITAL, LTD., COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD, UNIVERSITY HOSPITAL LTD.,** and the **SOUTH BROWARD HOSPITAL DISTRICT** (collectively hereafter referred to as "HOSPITALS") provided hospital services for Florida Medicaid in Broward, Miami-Dade, and Palm Beach Counties.

7. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the relator has provided the Attorney General of the United States and the Attorney General for the Southern District of Florida a statement of all material evidence and information related to the Complaint. This disclosure statement is supported by material evidence known to the relator at the

filing of this complaint establishing existence of defendant's false claims. Because the statement includes attorney-client communications and work product of relator's attorneys, and is submitted to the Attorney General and to the United States as potential co-counsel in this litigation, the relator understands this disclosure to be confidential.

8. The relator is a citizen of the United States of America and a resident of the State of Florida and was a citizen of the United States at all times relevant hereto.

9. The relator brings this action based upon her direct, independent, and personal knowledge.

10. Relator is the original source of this information to the United States.

11. Relator has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government.

12. Relator is a former employee of the Agency for Health Care Administration of the State of Florida.

13. Relator's position with the Agency for Health Care Administration was that of Medical Health Care Program Analyst in the Medicaid Program Integrity Unit.

14. As a result of her work for the Agency for Health Care Administration Medicaid Program Integrity Unit, the relator is familiar with the requirements of Medicaid and of the obligations of Florida Medicaid providers enrolled in the Medicaid Program.

## FALSE CLAIMS ACT

15. At the times relevant to this suit, the Federal False Claims Act ("FCA") provided, in the pertinent part, that:

(a) Any person who ... (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent clam paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person ....

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information ... (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729.

## MEDICAID PROGRAM

16. Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals. See 42 U.S.C. § 1396.

17. Although participation in Medicaid is voluntary, participating States must comply with certain requirements imposed by the Medicaid Act, 79 Stat. 343, as amended, 42 U.S.C. § 1396 et seq., and regulations imposed by the Secretary of Health and Human Services ("Secretary").

18. To qualify for federal assistance, a state must submit to the Secretary and have approved a "plan for medical assistance," id. § 1396(a), that contains a comprehensive statement describing the nature and scope of the state's Medicaid program. See 42 U.S.C. § 430.10 (1989).

19. The state plan is required to establish, among other things, a scheme for reimbursing health care providers for the medical services provided to Medicaid recipients.

20. The State of Florida elected to participate in the Medicaid program as reflected in Florida Statutes Chapter 409.

21. In accordance with federal law, the Secretary approved Florida's Medicaid plan, including its reimbursement scheme.

22. Under the State of Florida's Medicaid plan, the Agency for Health Care Administration ("AHCA") develops and carries out policies related to the Medicaid program.

23. Under Florida Statutes Section 409.907, the AHCA makes payments for medical assistance and related services rendered to Medicaid recipients only to an entity that has a provider agreement in effect.

24. The provider agreement requires the provider to comply with all state and federal laws pertaining to the Medicaid program. § 409.907(1), (2).

25. The Florida Statute § 409.907(3)(c) and the provider agreement also require that the provider maintain records relevant to its services and billing for a five (5) year period and it gives the State and Federal Government the right to access those records, including computer files. § 409.907(3) (e).

26. Section 409.907(3) (g) expressly obligates a Florida Medicaid provider to "[p]romptly report any moneys received in error or in excess of the amount to which the provider is entitled from the Medicaid program, and promptly refund such moneys to [Medicaid]."

27. The State may deny enrollment in the Florida Medicaid program to a provider that has violated federal or state laws, rules or regulations governing Florida's Medicaid program. § 409.907(10) (i).

28. Florida Statute Section 409.908 governs the State's reimbursement of Medicaid providers. The statute provides, in substance, that the State shall reimburse Medicaid providers in accordance with methodologies and fee schedules set forth in the rules promulgated by the AHCA.

## DEFENDANT SHERIDAN'S FALSE CLAIMS SCHEMES

29. At all times relevant to this Complaint, defendant **SHERIDAN HEALTHCARE, INC.**, and its subsidiaries such as **SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC.**, sought payments from Medicaid and agreed to and were bound by the policies, procedures and criteria for obtaining payments established by law.

30. Defendant SHERIDAN knowingly violated the policies, procedures, and criteria established by law in order to fraudulently obtain payments that they were not entitled to receive and/or payments in greater amounts than they were entitled to receive.

31. From at least the mid 1990s until present, defendant SHERIDAN engaged in a widespread billing scheme intended to defraud Medicaid through the submission of false claims for payment.

32. SHERIDAN employed physicians, paid the physicians' salaries, and contracted with and was reimbursed by hospitals for having their physicians provide medical services in the hospitals.

33. When a physician employed by SHERIDAN and contracted with a hospital provided care to a Medicaid patient in the emergency department, Medicaid paid for that service by reimbursing the hospital for the hospital's costs in providing the care.

34. This reimbursement included the amount that the hospital paid to SHERIDAN to provide the physician and pay the physician's salary.

35. This payment from Medicaid to the hospital was made under the Medicaid Hospital Services system.

36. At all times relevant to this action, SHERIDAN knew that the hospital was receiving payment from Medicaid for the medical care rendered by SHERIDAN physicians in the hospital emergency department.

37. At all times relevant to this action, despite being aware that the hospital was submitting bills to Medicaid that included the salaries of its employee doctors and receiving payment from Medicaid, SHERIDAN submitted bills for the exact same services to Medicaid under the Medicaid Physician Services system.

38. At all time relevant to this action, SHERIDAN submitted bills to Medicaid for services performed by its physicians in the defendant HOSPITAL's emergency departments as if they were not also being billed by the defendant HOSPITAL.

39. In addition to the above, at all times relevant to this action, SHERIDAN regularly increased the severity of the diagnosis of the patient to obtain a greater payment from Medicaid for the medical care provided by its employee physicians.

40. As set forth above, defendant SHERIDAN knowingly submitted or caused to be submitted untruthful, incorrect or incomplete requests for payment under Medicaid in violation of 31 U.S.C. § 3729.

41. As a result of defendant SHERIDAN's unlawful conduct, SHERIDAN caused the United States of America to pay SHERIDAN monies that SHERIDAN was not entitled to receive.

42. Pursuant to Florida Statute § 409.907(3) (c) and its provider agreements with Medicaid, SHERIDAN is required to maintain the records showing that SHERIDAN submitted or caused to be submitted untruthful, incorrect or incomplete requests for payment under Medicaid in violation of 31 U.S.C. § 3729 and caused the United States of America to pay SHERIDAN monies that SHERIDAN was not entitled to receive.

## DEFENDANT HOSPITALS' FALSE CLAIMS SCHEMES

43. At all times relevant to this Complaint, defendants **PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP, NORTH MIAMI MEDICAL CENTER, LTD., NORTH BROWARD HOSPITAL DISTRICT, PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY, VARIETY CHILDREN'S HOSPITAL, TENET HEALTHSYSTEM NORTH SHORE, INC., TENET HEALTHSYSTEM HOSPITALS, INC., FMC HOSPITAL, LTD., COLUMBIA HOSPITAL CORPORATION OF SOUTH**

BROWARD, UNIVERSITY HOSPITAL LTD., and the SOUTH BROWARD HOSPITAL DISTRICT sought payments from Medicaid and knew of the policies, procedures and criteria for obtaining payments.

44. Defendant HOSPITALS knowingly violated the policies, procedures, and criteria established by law in order to fraudulently obtain payments they were not entitled to receive or payments in greater amounts than they were entitled to receive.

45. From at least the mid 1990s until present, each of the defendant HOSPITALS engaged in a widespread billing scheme intended to defraud the Medicaid through the submission of false claims for payment.

46. At all times relevant to this action, the defendant HOSPITALS knew or should have know that Medicaid did not pay for non-emergency services and care provided in hospital emergency departments by hospital employed physicians, such as the contract physicians provided by SHERIDAN.

47. The defendant HOSPITALS therefore undertook a scheme whereby the diagnoses were routinely recorded so that they appeared to be appropriate for treatment in the emergency department.

48. The defendant HOSPITALS also recorded the diagnoses and treatments in such a manner as to avoid the requirement that authorization for the medical care be obtained as required by the Medicaid Medipass Program.

49. As set forth above, the defendant HOSPITALS knowingly submitted or caused to be submitted untruthful, incorrect or incomplete requests for payment under the Medicaid in violation of 31 U.S.C. § 3729.

50. As a result of the defendant HOSPITALS' unlawful conduct, the defendant HOSPITALS caused the United States of America to pay them monies that the defendant HOSPITALS were not entitled to receive.

51. Pursuant to Florida Statute § 409.907(3) (c) and their provider agreements with Medicaid, the defendant HOSPITALS are required to maintain the records showing that the defendant HOSPITALS submitted or caused to be submitted untruthful, incorrect or incomplete requests for payment under Medicaid in violation of 31 U.S.C. § 3729 and caused the

United States of America to pay the defendant HOSPITALS monies that THE HOSPITALS were not entitled to receive.

## CONSPIRACY OF SHERIDAN AND THE DEFENDANT HOSPITALS TO SUBMIT FALSE CLAIMS

52. SHERIDAN and each of the defendant HOSPITALS colluded to enable their false claim scheme to work.

53. SHERIDAN arranged with the defendant HOSPITALS for SHERIDAN'S employee physicians to provide non-emergency services in the defendant HOSPITAL emergency departments and for such services to be improperly billed to Medicaid.

54. SHERIDAN and each of the defendant HOSPITALS orchestrated the double billing of those improper services by billing Medicaid for those services both under the Medicaid Physician Services system and the Medicaid Hospital Services system.

## EXAMPLES OF DEFENDANTS' FALSE CLAIMS

55. The following are examples of payments from Medicaid to both SHERIDAN and the defendant HOSPITALS for the same care provided during the calendar year 2003:

a. On September 30, for treating a 17 year old with impacted ear wax in the emergency department, PLANTATION GENERAL HOSPITAL received $110.56 from Medicaid while SHERIDAN received $42.24.

b. On September 5, for treating a 10 year old with constipation in the emergency department, PLANTATION GENERAL HOSPITAL received $209.84 from Medicaid while Sheridan received $64.68.

c. On September 28, for treating a 15 year old with conjunctivitis in the emergency department by prescribing eye drops, NORTHWEST MEDICAL CENTER received $72.68 while SHERIDAN received $42.24.

d. On June 29, for treating a 17 year old with otitis media, PLANTATION GENERAL HOSPITAL received from Medicare $103.92 while SHERIDAN received $103.92.

e. On August 10, for treating a 17 year old with sinusitis, PLANTATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $42.24.

f. On July 12, for treating a 17 year old with otitis media, PLANTATION GENERAL HOSPITAL received from Medicare $207.84, while SHERIDAN received $42.24.

g. On June 22, for treating a 13 year old with conjunctivitis – eye drops prescribed, PLANTATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $42.24.

h.  On October 4, for treating a 12 year old with constipation – laxative prescribed, PLANTATION GENERAL HOSPITAL received from Medicare $227.57, while SHERIDAN received $64.68

i.  On August 9 for treating a 17 year old with insect bite, PARKWAY REGIONAL HOSPITAL received from Medicare $174.64, while SHERIDAN received $42.24.

j.  On October 7, for treating a 12 year old with alopecia (hair loss) from dermatophytosis (ringworm) - prescribed medicated shampoo and antifungal cream, PLANTATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $42.24.

k.  On August 25, for treating a 7 year old with impetigo, PARKWAY REGIONAL HOSPITAL received from Medicare $74.20, while SHERIDAN received $22.92.

l.  On November 16, for treating a 8 year old with insect bite of the hand, PLANTATION GENERAL HOSPITAL received from Medicare $220.92 while SHERIDAN received $42.24.

m.  On July 3, for treating a 8 year old with constipation, PLANTATION GENERAL HOSPITAL received from Medicare $218.84 while SHERIDAN received $64.68.

n.  On October 13, for treating a 9 year old with scabies, PARKWAY REGIONAL received from Medicare $91.15 while SHERIDAN received $42.24.

o. On July 24, for treating a 9 year old with seborrheic dermatitis, PARKWAY REGIONAL received from Medicare $87.32 while SHERIDAN received $42.24.

p. On September 29, for treating a 16 year old with conjunctivitis, PLANATATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $42.24.

q. On June 16, for treating a 16 year old with otitis media, PLANATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $42.24.

r. On August 16, for treating an 8 year old with scabies, PLANTATION GENERAL HOSPITAL received from Medicare $103.92, while SHERIDAN received $22.92.

s. On December 9, for treating a 15 year old with conjunctivitis, PLANTATION GENERAL HOSPITAL received from Medicare $110.15 while SHERIDAN received $42.24.

56. The following are examples of payments from Medicaid to both SHERIDAN and the defendant HOSPITALS for the same care provided during the calendar year 2004:

a. On July 20, for treating a 17 year old with urticaria (rash), PARKWAY REGIONAL HOSPITAL received from Medicare $200.98 while SHERIDAN received $42.24.

b.  On July 8, for treating a 17 year old with urticaria (hives), PARKWAY REGIONAL HOSPITAL received from Medicare $200.98 while SHERIDAN received $42.24.

c.  On July 10 for treating a 13 year old with scanty menstruation, PARKWAY REGIONAL HOSPITAL received from Medicare $321.74 while SHERIDAN received $42.24.

d.  On September 6, for treating a 10 year old with scabies, PLANATION GENERAL HOSPITAL received from Medicare $105.36 while SHERIDAN received $42.24.

e.  On December 14, for treating a 16 year old with urticaria, PARKWAY REGIONAL HOSPITAL received from Medicare $100.49 while SHERIDAN $42.24.

f.  On August 12, for treating a 17 year old with dermatitis, PARKWAY REGIONAL HOSPITAL received from Medicare $100.49 while SHERIDAN received $42.24.

g.  On October 22, for treating a 14 year old with thrush, NORTHWEST MEDICAL CENTER received from Medicare $72.70 while SHERIDAN received $22.92.

h.  On December 30, for treating a 10 year old with scabies, PLANTATION GENERAL HOSPITAL received from Medicare $105.36 while SHERIDAN received $42.24.

i.  On July 29, for treating a 9 year old with insect bite,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $105.36 while SHERIDAN received $22.92.

j.  On September 8, for treating a 10 year old with dyshidrosis,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $105.36 while SHERIDAN received $42.24.

k.  On November 21, for treating a 9 year old with constipation,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $210.72 while SHERIDAN received $64.68.

l.  On August 12, for treating a 6 year old with insect bite,
    PARKWAY REGIONAL HOSPITAL received from Medicare
    $100.47 while SHERIDAN received $42.24.

m.  On January 15, for treating a 12 year old with skin rash,
    NORTHWEST MEDICAL CENTER received from Medicare
    $145.40 while SHERIDAN received $22.92.

n.  On January 17, for treating a 12 year old with unspecified allergy,
    NORTHWEST MEDICAL CENTER received from Medicare
    $290.80 while SHERIDAN received $42.24.

o.  On October 6, for treating an 8 year old with dermatitis,
    PARKWAY REGIONAL HOSPITAL received from Medicare
    $200.98 while SHERIDAN received $22.92.

p.  On July 24, for treating a 7 year old with insect bite,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $210.72 while SHERIDAN received $42.24.

q.  On October16, for treating a 6 year old with conjunctivitis,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $45.40 while SHERIDAN received $42.24.

r.  On August 6, for treating a 15 year old with dermatitis,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $110.36 while SHERIDAN received $22.92.

s.  On August 4, for treating a 4 year old with insect bite, PARKWAY
    REGIONAL HOSPITAL received from Medicare $200.98 while
    SHERIDAN received $42.24.

t.  On December 7, for treating a 14 year old with acute pharyngitis,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $105.36 while SHERIDAN received $42.24.

u.  On September 8, for treating a 10 year old with dyshidrosis,
    PLANTATION GENERAL HOSPITAL received from Medicare
    $105.36 while SHERIDAN received $42.24.

57. The following are examples of payments from Medicaid to both

SHERIDAN and the defendant HOSPITALS for the same care provided

during the calendar year 2005:

a.  On January 9, for treating a 2 year old with diaper rash, NORTHWEST MEDICAL CENTER received from Medicare $158.64  while SHERIDAN received $22.92.

b.  On February 2, for treating a 12 year old with dermatitis, PLANTATION GENERAL HOSPITAL received from Medicare $110.54  while SHERIDAN received $42.24.

c.  On March 3 for treating a 16 year old with otitis media, PARKWAY REGIONAL HOSPITAL received from Medicare $211.06  while SHERIDAN received $42.24.

d.  On May 12, for treating a 10 year old with conjunctivitis, PLANATION GENERAL HOSPITAL received from Medicare $110.54  while SHERIDAN received $42.24.

e.  On May 4, for treating a 16 year old with acute pharyngitis, PLANTATION  GENERAL HOSPITAL received from Medicare $128.04  while SHERIDAN received $22.92.

f.  On January 5, for treating a 8 year old with scabies, NORTHWEST MEDICAL CENTER received from Medicare $105.53, MIAMI CHILDREN'S HOPSITAL received from Medicare $266.04 while SHERIDAN received $42.24.

g.  On January 11, for treating an 8 year old with gingivitis, PARKWAY REGIONAL HOSPITAL received from Medicare $105.53  while SHERIDAN received $42.24.

h. On April 30, for treating a 10 year old with insect bite, PARKWAY REGIONAL HOSPITAL received from Medicare $105.53 while SHERIDAN received $22.92.

i. On January 18, for treating a 12 year old with constipation, PLANTATION GENERAL HOSPITAL received from Medicare $228.08 while SHERIDAN received $64.68.

j. On April 11, for treating a 9 year old with insect bite, PLANTATION GENERAL HOSPITAL received from Medicare $110.54 while SHERIDAN received $22.92.

k. On April 5, for treating an 11 year old with insect bite, NORTHWEST MEDICAL CENTER received from Medicare $221.08 while SHERIDAN received $42.24.

l. On April 16, for treating a 5 year old with scabies, PLANTATION GENERAL HOSPITAL received from Medicare $110.54 while SHERIDAN received $42.24.

m. On February 2, for treating a 15 year old with "hair disease", NORTHWEST MEDICAL CENTER received from Medicare $168.76 while SHERIDAN received $42.24.

n. On April 26, for treating a 9 year old with otitis media, NORTHWEST MEDICAL CENTER received from Medicare $75.32 while SHERIDAN received $42.24.

o. On February 26, for treating a 14 year old with strep throat, PARKWAY REGIONAL HOSPITAL received from Medicare $225.56 while SHERIDAN received $42.24.

p. On January 22, for treating a 16 year old with constipation, PLANTATION GENERAL HOSPITAL received from Medicare $442.16 while SHERIDAN received $64.68.

q. On February 20, for treating a 4 year old with insect bite, PLANATATION GENERAL HOSPITAL received from Medicare $110.54 while SHERIDAN received $22.92.

r. On February 7, for treating a 6 year old with otitis media, NORTHWEST MEDICAL CENTER received from Medicare $75.32 while SHERIDAN received $42.24.

s. On April 22, for treating a 6 year old with otitis media, PARKWAY REGIONAL HOSPITAL received from Medicare $211.06 while SHERIDAN received $42.24.

t. On February 27, for treating a 3 year old with conjunctivitis, PLANATATION GENERAL HOSPITAL received from Medicare $110.54 while SHERIDAN received $22.92.

u. On February 12, for treating a 3 year old with conjunctivitis, PARKWAY REGIONAL HOSPITAL received from Medicare $105.53 while SHERIDAN received $42.24.

v. On March 27, for treating a 4 year old with otitis media, NORTHWEST MEDICAL CENTER received from Medicare $150.64 while SHERIDAN received $42.24.

58. The below table includes examples of payments from Medicaid to both SHERIDAN and the North Miami Medical Center for the same care provided to a single 10 year old recipient in the year 2004.

| Date of Treatment | Diagnosis | Sheridan Medicaid Payment | North Miami Medical Center Emergency Department Medicaid Payment (Not including labs, films, supplies, etc) |
|---|---|---|---|
| 2/9/2004 | Asthma | $64.68 | $365.36 |
| 2/17/2004 | Abdominal Pain | $42.24 | $91.34 |
| 3/23/2004 | Contusion of Hand | $64.68 | $182.68 |
| 4/25/2004 | Acute Pharyngitis | $22.92 | $194.18 |
| 10/19/2004 | Constipation | $42.24 | $200.98 |
| 10/29/2004 | Urinary Tract Infection | $42.24 | $108.76 |
| 11/24/2004 | Urinary Tract Infection | $42.24 | $122.88 |

59. The below table includes examples of payments from Medicaid to both SHERIDAN and PLANTATION GENERAL HOSPITAL for the same care provided to a single 15 year old recipient in the year 2004.

| Date of Treatment | Diagnosis | Sheridan Medicaid Payment | Plantation General Hospital Emergency Department Medicaid Payment (Not including labs, films, supplies, etc) |
|---|---|---|---|
| 2/18/04 | Sprain of Ankle | $42.24 | $110.58 |
| 2/18/04 | Contusion of Hip | $42.24 | $110.58 |
| 3/11/04 | Anxiety State | $64.68 | $347.74 |
| 4/18/04 | Acute Upper Respiratory Infection | $64.68 | $248.43 |
| 9/10/04 | Anxiety State | $42.24 | $238.99 |
| 10/31/04 | Infectious Mononucleosis | $42.24 | $105.36 |

60. SHERIDAN systematically "upcodes" the diagnoses of its patients in bills submitted to Medicaid to make them appear more appropriate for emergency care.

61. One example of SHERIDAN upcoding patient diagnoses is SHERIDAN listing the patient diagnosis as "toxic effect of venom" while the defendant HOSPITAL diagnosis for the same visit lists the diagnosis as

"insect bite." This occurred throughout the period 1998 through 2005, but a specific entry occurred on September 24, 2004.

62. Another example is SHERIDAN listing the patient diagnosis of "abdominal pain" while he defendant HOSPITAL diagnosis for the same visit lists the diagnosis as "constipation." This occurred throughout the period 1998 through 2005, but a specific entry occurred on May 27, 2004.

63. Yet a third example is SHERIDAN listing the patient diagnosis of "respiratory distress" while he defendant HOSPITAL diagnosis for the same visit lists the diagnosis as "allergic rhinitis" or a runny nose. This occurred throughout the period 1998 through 2005.

## COUNT I
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF SHERIDAN HEALTHCARE, INC.

64. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

65. SHERIDAN HEALTHCARE, INC. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in

obtaining the payment or approval of false Medicaid claims by the United States of America.

66. SHERIDAN HEALTHCARE, INC. submitted or caused to be submitted false or fraudulent claims to United States of America.

67. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

68. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

69. SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

70. SHERIDAN CHILDREN'S HEALTHCARE SERVICES, INC. submitted or caused to be submitted false or fraudulent claims to United States of America.

71. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

72. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT II
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP

73. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

74. PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

75. PLANTATION GENERAL HOSPITAL LIMITED PARTNERSHIP submitted or caused to be submitted false or fraudulent claims to United States of America.

76. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

77. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

<u>COUNT III</u>
<u>FEDERAL FALSE CLAIMS ACT VIOLATIONS OF NORTH MIAMI</u>
<u>MEDICAL CENTER, LTD</u>

78. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

79. NORTH MIAMI MEDICAL CENTER, LTD. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

80. NORTH MIAMI MEDICAL CENTER, LTD. submitted or caused to be submitted false or fraudulent claims to United States of America.

81. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

82. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT IV
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF NORTH BROWARD HOSPITAL DISTRICT

83. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

84. NORTH BROWARD HOSPITAL DISTRICT knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

85. NORTH BROWARD HOSPITAL DISTRICT submitted or caused to be submitted false or fraudulent claims to United States of America.

86. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

87. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT V
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY

88. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

89. PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

90. PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY submitted or caused to be submitted false or fraudulent claims to United States of America.

91. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

92. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

<u>COUNT VI</u>
<u>FEDERAL FALSE CLAIMS ACT VIOLATIONS OF VARIETY
CHILDREN'S HOPSITAL</u>

93. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

94. VARIETY CHILDREN'S HOSPITAL knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

95. VARIETY CHILDREN'S HOSPITAL submitted or caused to be submitted false or fraudulent claims to United States of America.

96. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

97. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT VII
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF TENENT HEALTHSYSTEM NORTH SHORE, INC.

98. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

99. TENET HEALTHSYSTEM NORTH SHORE, INC. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

100. TENET HEALTHSYSTEM NORTH SHORE, INC. submitted or caused to be submitted false or fraudulent claims to United States of America.

101. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

102. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT VIII
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF TENET HEALTHSYSTEM HOSPITALS, INC.

103.  Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

104.  TENET HEALTHSYSTEM HOSPITALS, INC. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

105.  TENET HEALTHSYSTEM HOSPITALS, INC. submitted or caused to be submitted false or fraudulent claims to United States of America.

106.  This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

107.  The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT IX
## FEDERAL FALSE CLAIMS ACT VIOLATIONS OF FMC HOSPITAL, LTD.

108.  Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

109.  FMC HOSPITAL, LTD. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

110.  FMC HOSPITAL, LTD. submitted or caused to be submitted false or fraudulent claims to United States of America.

111.  This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

112.  The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

<u>COUNT X</u>
<u>FEDERAL FALSE CLAIMS ACT VIOLATIONS OF COLUMBIA</u>
<u>HOSPITAL CORPORATION OF SOUTH BROWARD</u>

113.  Relator incorporates by reference paragraphs 1 through 63 of this

Complaint, as if fully set forth herein.

114.  COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD

knowingly made or used false or fraudulent statements or records, or

caused false or fraudulent statements or records to be made or used, for

the purpose of obtaining or aiding in obtaining the payment or approval

of false Medicaid claims by the United States of America.

115.  COLUMBIA HOSPITAL CORPORATION OF SOUTH BROWARD

submitted or caused to be submitted false or fraudulent claims to United

States of America.

116.  This course of conduct violated the False Claims Act, 31 U.S.C. §§

3729 *et seq.*

117.  The United States of America made payment upon false, fictitious, or

fraudulent claims and was therefore damaged.

## COUNT XI
### FEDERAL FALSE CLAIMS ACT VIOLATIONS OF UNIVERSITY HOSPITAL LTD.

118.    Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

119.    UNIVERSITY HOSPITAL LTD. knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

120.    UNIVERSITY HOSPITAL LTD. submitted or caused to be submitted false or fraudulent claims to United States of America.

121.    This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

122.    The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.

## COUNT XII
### FEDERAL FALSE CLAIMS ACT VIOLATIONS OF SOUTH BROWARD HOSPITAL DISTRICT

123.    Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

124. SOUTH BROWARD HOSPITAL DISTRICT knowingly made or used false or fraudulent statements or records, or caused false or fraudulent statements or records to be made or used, for the purpose of obtaining or aiding in obtaining the payment or approval of false Medicaid claims by the United States of America.

125. SOUTH BROWARD HOSPITAL DISTRICT submitted or caused to be submitted false or fraudulent claims to United States of America.

126. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

127. The United States of America made payment upon false, fictitious, or fraudulent claims and was therefore damaged.


### COUNT XIII
### CONSPIRACY TO SUBMIT FALSE CLAIMS

128. Relator incorporates by reference paragraphs 1 through 63 of this Complaint, as if fully set forth herein.

129. Each of the defendants to this action, combined, conspired, and agreed together to defraud the United States of America by knowingly submitting false claims for the purpose of getting the false or fraudulent claims paid or allowed and committed the other overt acts set forth above

in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(3), causing damage to the United States of America.

WHEREFORE, the relator on behalf of the United States of America requests the following relief:

a. That the United States of America be awarded damages in the amount of three times the amount of damages the United States of America has sustained because of false claims alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides;

b. That the maximum civil penalty be imposed for each and every false claim that defendant presented to the United States of America and/or its grantees;

c. That pre-judgment and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

d. That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

e. That the relator be awarded the maximum amount allow to her pursuant to the False Claims Act; and

f. That this Court award such other and further relief as it deems proper.

## DEMAND FOR JURY TRIAL

Relator, on behalf of herself and the United States of America, demands a jury trial on all claims alleged herein.

Respectfully submitted,

MAGLIO CHRISTOPHER &
TOALE LAW FIRM

_____

Altom M. Maglio (88005)
amm@sarasotalaw.com
William G. Christopher (751936)
wchristopher@sarasotalaw.com
2750 Ringling Boulevard, Suite 4
Sarasota, FL 34237
Phone 941.952.5242
Fax 941.952.5042
Attorneys for the Relator

Dated March ___, 2007

## DEMAND FOR JURY TRIAL

Relator, on behalf of herself and the United States of America, demands a jury trial on all claims alleged herein.

Respectfully submitted,

MAGLIO CHRISTOPHER &
TOALE LAW FIRM

Altom M. Maglio (88005)
amm@sarasotalaw.com
William G. Christopher (751936)
wchristopher@sarasotalaw.com
1751 Mound Boulevard, 2nd Floor
Sarasota, FL 34236
Phone 941.952.5242
Fax 941.952.5042
Attorneys for the Relator

Dated March 28,,2007